IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JAMES H. FRENCH, ET AL.,      )
                              )
     Plaintiffs,              )
                              )
         v.                   )    1:04cv550 (JCC)
                              )
ASSURANCE COMPANY OF AMERICA, )
ET AL.,                       )
                              )
     Defendants.              )

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' renewed motions for summary judgment. For the reasons stated below, the Court will grant Defendants' motions.

### **I. Background**

On or about July 23, 1993, Jeffco Development Corporation ("Jeffco") contracted with Plaintiffs James and Kathleen French to construct a single family residence at 434 Hidden Springs Road, Fairfax, Virginia, ("the residence"). In its construction, Jeffco through its subcontractors applied an allegedly defective synthetic stucco system known as Exterior Insulating Finishing System ("EIFS") to the exterior of the residence. Jeffco substantially completed the residence on or about December 12, 1994. In late 1999, the Frenches discovered that the EIFS system was defective and was defectively placed on

the residence, causing water damage to the structure and walls of the residence.

On or about November 29, 1999, the Frenches filed suit in Fairfax County, Virginia against Jeffco alleging multiple counts, including breach of contract.  The Frenches sought damages for the defective construction, attorneys' fees, and costs.

Jeffco was covered by commercial general liability ("CGL") insurance policies issued by Defendants Assurance Company of America ("Assurance") and United States Fire Insurance Company ("U.S. Fire").  The parties agree that Maryland law controls both policies.  Both policies contained the following provisions:

>     SECTION I - COVERAGES
>     COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>         1.   Insuring Agreement
>             a.   We will pay those sums that the
>                  insured becomes legally obligated
>                  to pay as damages because of . . .
>                  "property damage" to which this
>                  insurance applies.  We will have
>                  the right and duty to defend the
>                  insured against any "suit" seeking
>                  those damages.  However, we will
>                  have no duty to defend the insured
>                  against any "suit" seeking damages
>                  for . . . "property damage" to
>                  which this insurance does not
>                  apply. We may, at our discretion,
>                  investigate any "occurrence" and
>                  settle any claim or "suit" that may
>                  result . . . .
>                  . . .
>
>     SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS
>         . . .

>    2.   Duties In the Event of Occurrence, Offense, Claim or Suit
>         . . .
>         d.   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.
>    3.   Legal Action Against Us
>         . . .
>         A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial . . . . An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.
>    . . .

(*See* Def. U.S. Fire Mot., Ex. F).

Both insurers defended Jeffco in the suit brought by the Frenches, but under a reservation of rights. Defendants hired the law firm of Sinnott, Nuckols & Logan ("SNL") to represent Jeffco. On June 4, 2003, SNL offered the Frenches' counsel $75,000 to settle the case. (*See* Def. Assurance Mot., Ex. G). By letter dated July 25, 2003 from the Frenches' counsel to SNL, the Frenches made a settlement demand of, *inter alia*, $100,000 from Jeffco and Jeffco's consent to entry of judgment against it and in favor of the Frenches for $450,000. (Pls.' Opp'n, Ex. 4). The Defendants did not respond to the letter. On July 28, 2003, the date of trial, Jeffco's corporate counsel sent a letter to the Defendants which stated that given the Defendants' refusal to provide coverage in response to the Plaintiffs' settlement demands:

>    you leave Jeffco with no alternative but to take all
>    reasonable steps to protect its interest, including but
>    not limited to, entering into a consent judgment for
>    the damages alleged and assigning all of its rights
>    against all or some of the carriers to the Plaintiffs
>    in exchange for a full and final release and
>    satisfaction of that judgment.

(Pls.' Opp'n, Ex. 5).

On the date of trial, the only remaining count of the Frenches' motion for judgment alleged breach of contract. However, that day, the Frenches and Jeffco reached a settlement agreement. Assurance and U.S. Fire did not participate in, or affirmatively consent to, the settlement agreement. Under the settlement, Jeffco agreed to have a Consent Judgment entered against it for $450,000 and to assign to the Frenches its rights against its insurance companies, including Assurance and U.S. Fire. By order entered August 29, 2003, the state court entered a final consent judgment against Jeffco for $450,000. (Compl., Ex. 2). By order entered September 2, 2003, the state court marked the $450,000 as fully paid and satisfied. (Def. U.S. Fire Mot., Ex. M).

On April 1, 2004, Plaintiffs filed a motion for judgment in Fairfax County, Virginia against the Defendant insurers. On May 12, 2004, Defendants permissibly removed to this Court. On January 21, 2005, Plaintiffs filed a motion for partial summary judgment and Defendants Assurance and U.S. Fire filed motions for summary judgment. On March 1, 2005, this Court granted Defendants' motions for summary judgment on the grounds

that the failure of the EIFS was not an "occurrence," was not an accident, and therefore, was not covered under the insurance policy. Since this Court found no coverage under the policy, the Court did not reach Defendants' three other grounds for summary judgment.

On appeal, the United States Court of Appeals for the Fourth Circuit affirmed this Court's ruling in part, and denied in part. Specifically, the Fourth Circuit ruled that:

> [U]nder Maryland law, a standard 1986 commercial general liability policy form published by the ISO does not provide liability coverage to a general contractor to correct defective workmanship performed by a subcontractor. We also hold that, under Maryland law, the same policy form provides liability coverage for the cost to remedy unexpected and unintended property damage to the contractor's otherwise nondefective work-product caused by the subcontractor's defective workmanship.

*French v. Assurance Co. Of Am.*, 448 F.3d 693, 706-07 (4th Cir. 2006). Stated differently, the insurance policy at issue does not cover the costs to correct the Frenches' defective EIFS exterior, but it does cover the costs to remedy the damage that the defective EIFS exterior caused to the nondefective remainder of the residence.

Accordingly, Plaintiffs' claims for declaratory judgment and breach of the express duty to indemnify (to the extent of the costs to remedy the damage to the nondefective "remainder" of the residence) are the only claims that remain before this Court. Defendants have renewed their motions for

summary judgment on the three grounds previously left unaddressed, and these motions are now currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991)(citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248-52. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248.

### III. Analysis

In their renewed motions for summary judgment, Defendants' arguments are threefold: (1) Defendants did not agree on the settlement on which the Frenches base their claim, and therefore, recovery under the policy is barred by the "no-action" clause; (2) Defendants never consented to the settlement with the Frenches, and therefore, no coverage is owed pursuant to the "voluntary payments" provision of the policy; and (3) the settlement amount the Frenches seek to recover is not an amount that Jeffco was ever "legally obligated to pay." It is upon these three grounds that Defendants U.S. Fire and Assurance seek summary judgment.

A. <u>Whether the "no-action" provision absolves Defendants of liability under the consent judgment.</u>

This Court will first address Defendants' argument that recovery is barred by the "no-action" provision of the policy. The central issue governing the success of this argument is whether Defendants consented or waived their right to consent to the entry of judgment against Jeffco. If Defendants consented or waived consent, the no-action provision will be inapplicable and Defendants will be liable for a portion of the consent judgment. Otherwise, the no-action clause will control and will prevent recovery by the Plaintiffs.

Plaintiffs and Defendants dispute the extent to which Defendants were informed of the potential settlement: Defendants

claim that the settlement was never brought to their attention, while Plaintiffs contend that Defendants were consistently informed that the case may be settled by Jeffco at any moment. Assuming *arguendo* that Plaintiffs' recitation of the facts is accurate, this Court finds that Defendants still did not waive their right to consent under Maryland law, and thus, summary judgment on this ground is appropriate.

In the Conditions section of the Policies, the no action clause provides:

> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial . . . . An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

(Policy at IV(3)). Commonly found in liability insurance policies, these clauses are meant to protect an insurer from "overly collusive or overly generous or unnecessary settlements by the insured at the expense of the insurer." *Phillips Way, Inc. v. Am. Equity Ins. Co.*, 795 A.2d 216, 220-21 (Md. Ct. Spec. App. 2002)(quoting COUCH ON INSURANCE § 105.7, p. 105-12 (3rd ed. 1997)).

In Maryland, as in most jurisdictions, these "no-action" or "consent-to-settle" provisions are generally valid, and courts are reluctant to find a waiver. *See Nationwide Mutual Ins. v. Webb*, 436 A.2d 465 (Md. 2002). In fact, in order for a court in Maryland to hold that the insurer has waived his

consent, the insurer must either deny liability or refuse to defend the insured. *U.S. Fid. & Guar. Co. v. Nat'l Paving & Contracting Co.*, 178 A.2d 872 (Md. 1962); *Webb,* 436 Md. at 478, n.11. If the insurer neither denies liability nor refuses to defend, then Maryland law only requires that the insurer may not refuse to settle in bad faith. *Allstate Ins. Co. v. Campbell*, 639 A.2d 652, 659 (Md. 1994).

Plaintiffs do not dispute that Defendants never denied liability before settlement and intended to defend Jeffco through trial. Instead, Plaintiffs argue that the consent-to-settle provisions are unenforceable since Defendant refused to settle this case in bad faith. Specifically, Defendants allegedly knew that Plaintiffs would settle for $150,000 and that their offer of $75,000 would be rejected. Plaintiffs argue that, in electing for a trial and exposing Jeffco to more potential liability, Defendants acted in bad faith, thereby waiving the "consent" provision. This Court cannot agree with this conclusion.

This Court will not assume bad faith on behalf of Defendants' simply because they were aware of an amount that Plaintiffs would have accepted and did not make the corresponding offer. Plaintiffs have provided no evidence of bad faith, but only unsupported allegations that are contrary to law. Maryland law nowhere provides that bad faith shall be presumed if: (1) an insurer rejects a settlement that the insured believes is

favorable; or (2) an insurer is aware of the amount of money that it will take to settle the case, and chooses to proceed with trial.  However, that is precisely what Plaintiffs request this Court to find.  Accordingly, these mere allegations are not enough to survive Defendants' motions for summary judgment. *Anderson*, 477 U.S. at 248-52.

As stated before, Defendants never denied liability before settlement and were committed to defending Jeffco throughout the entire underlying litigation.  They conducted discovery, hired experts, and prepared for trial; but on the trial's first day, Jeffco settled the case without their consent. This Court appreciates that Jeffco's decision was hardly contrary to reason: Jeffco could agree to a consent judgment of $450,000, albeit without the Defendants' consent, and disappear from the conflict by only having to pay $25,000; or, it could go to trial, potentially receive a substantially greater verdict against it, and then fight with its insurer's over liability of that judgment.[1]  It is no surprise that Jeffco opted to settle when faced with that particularly one-sided decision.  However, if Jeffco today sought indemnity from its insurers for the amount it has already paid under the policy ($25,000), it too would fall

---

[1] Plaintiffs' brief implies that Defendants' interests were not aligned with Jeffco's in their representation since they would deny coverage for any judgment against Jeffco.  This Court disagrees the respective interests were not aligned, however, if Jeffco had any concerns of a conflict of interest, it should have raised those concerns in the Circuit Court of Fairfax County at the appropriate time.

short, since it did not receive Defendants' consent. Accordingly, the Frenches, standing in the shoes as Jeffco as its assignees, also may not enforce the consent judgment against Defendants.

In sum, the no-action clause will not be deemed as waived since the Defendants never denied liability before settlement, never refused to defend Jeffco, and did not refuse to settle in bad faith. Therefore, under Maryland law, this valid no-action clause precludes Plaintiffs from recovering on the consent judgment against Jeffco. Accordingly, there is no genuine dispute as to a material fact, and summary judgment is appropriate.

> B. Whether the "voluntary payments" provision absolves Defendants of liability under the consent judgment.

Although this Court's holding under the Section III.A *supra* obviates the need to address this argument since summary judgment in full is appropriate on the aforementioned ground, this Court additionally finds that summary judgment is also appropriate due to the policy's "voluntary payments" provision.

The "voluntary payments" provision provides that an "insured" will not "voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without [Defendants'] consent." (Policy at IV(2)(d)). The Maryland Court of Appeals has routinely upheld these provisions in stating that such voluntary assumption of an obligation by the insured "relieves the insurer from liability, without proof or prejudice

-11-

from the insurer." *Ohio Cas. Ins. Co. v. Ross*, 222 F.Supp. 292, 297 (D.Md. 1963). *See also American Automobile Ins. Co. v. Fidelity & Cas. Co.*, 152 A. 523 (Md. 1930).

This Court has concluded as a matter of law that Defendants did not consent or waive consent to the judgment Plaintiffs seek to enforce. *See supra* 8-10. Accordingly, Jeffco voluntarily assumed the $450,000 obligation in the consent judgment from the Circuit Court of Fairfax County in violation of the "voluntary payments" clause of the policy. Therefore, Defendants are relieved from liability, and summary judgment is appropriate in their favor.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' renewed motion for summary judgment in full. An appropriate Order will issue.

October 16, 2006                    _____/s/_____
Alexandria, Virginia                          James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE